UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Walter ROSALES, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>THE ROMAN CATHOLIC BISHOP OF SAN DIEGO, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 23-cv-0908-AGS-JLB<br><br>**ORDER DENYING MOTION TO REMAND (ECF 4), GRANTING IN PART MOTIONS TO DISMISS (ECF 21 & 23), GRANTING IN PART MOTIONS FOR SANCTIONS (ECF 34 & 39), MOOTING REMAINING MOTIONS (ECF 17 & 22), AND CLOSING CASE** |

　　　　This feud dates back three decades. In the early 1990s, some "Kumeyaay Indians" held a leadership election with fateful consequences for their tribe, the "Jamul Indian Village." *See Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 989 (9th Cir. 2020). Plaintiffs lost that vote. The new leadership then chose to "build and operate a casino" and hotel on the Village's tribal land. *Id*. at 990. Plaintiffs opposed that plan. And they did not go quietly. In the ensuing years, they brought over 20 "legal actions" before "tribal tribunals, administrative boards, and federal courts in the courts of California and the District of Columbia, all without success." *Id*.

　　　　Plaintiffs now return to court with a new theory. Like its many predecessors, though, this suit fails. The reason will not surprise the litigants: failure to join an indispensable party. Several of plaintiffs' prior attempts to forestall the construction or expansion of the Jamul Village Casino have run aground on the rocky shoals of this same legal obstacle. While plaintiffs no doubt feel strongly about their cause, they have now been told by multiple courts—over several years—that their legal position is futile. Meanwhile, various defendants and the rest of the tribe have endured years and years of meritless lawsuits.

　　　　The judicial system should provide finality. So, plaintiffs must at long last pay a price for continuing their campaign—without legal cause and in the face of stern and escalating judicial warnings. This case is dismissed. And it is the Court's reluctant duty to grant the defense's motion for sanctions.

# BACKGROUND

In 1912, the Catholic Church was "deeded a small parcel in Rancho Jamul, San Diego County, California, . . . for use as an Indian cemetery." *Jamul Action*, 974 F.3d at 989. "No more than a portion of the land has ever been used as a burial ground." *Id.* "On the remainder of the parcel," "several families of Kumeyaay Indians have made their home for generations." *Id.* In 1982, the church gave the families "the greater part" of the original grant in two parcels that did not include the cemetery. *Id.* Eventually, the Bureau of Indian Affairs "recognized" those families as a tribe—the "Jamul Indian Village"—and the "United States took" those two parcels "into trust" for them. *Id.* The trust parcels are where the Village decided to "build and operate a casino" and hotel. *Id.* Later, in 2017 the Roman Catholic Bishop of San Diego formally deeded to the Village the last parcel, known as the "cemetery plot" and officially designated "597-080-06." (*See* ECF 4, at 14.)

These ownership interests have bedeviled plaintiffs' prior lawsuits, in large part because the Village "enjoys sovereign immunity" and "cannot be forced to join [an] action without its consent." *See Rosales v. United States*, 73 F. App'x 913, 914 (9th Cir. 2003). A major feature of plaintiffs' Sisyphean legal task has been trying—and failing—to overcome this immunity in their effort to upset the Village's ownership of the parcels.

**A.   New Legal Theory: Cemetery Plot's Fraudulent Transfer**

In the latest installment of this long-running legal drama, plaintiffs claim that the "cemetery plot"—the one *not* taken into trust by the federal government—never properly became Village property. (*See* ECF 4, at 14.) The Bishop purportedly transferred it for "no consideration." (*Id.*) That transfer was "fraudulent," say plaintiffs, and thus the Bishop remains the parcel's "true owner." (*Id.* at 14–15.)

Armed with this theory, plaintiffs sued the Bishop and engineering company Condon-Johnson Associates, but pointedly omitted the (immune) Village as a defendant. (*See generally* ECF 4.) In their complaint, plaintiffs contend that CJ Associates' current construction project in support of the Village's hotel is "desecrating the[ir] families' remains at the cemetery." (ECF 4, at 9.) Specifically, CJ Associates is drilling underground

holes for 120 "soil nails"—thin "threaded steel" bars, ranging up to "35 feet" long. (ECF 4, at 8–9.) These soil nails help "maintain the structural integrity of the perimeter" of the Village's hotel and adjoining parking garage, but they also protrude into the adjacent cemetery plot. *See* Tribal Environmental Impact Report, Jamul Casino Hotel and Event Center Project, at 2.3.10, available at https://files.ceqanet.opr.ca.gov/278736-2/attachment/7lo1GGdDbMXYzPxQgaZCaKsJZaEkGiALvMu4cadun5rOkKiyAReSc8jJo7w2bw0U_l0HYzmpGdQ5Kluc0 [https://perma.cc/9WLD-WCUH]. Due to this project, plaintiffs allege that CJ Associates and the Bishop are violating a host of California statutory, constitutional, and common-law protections. (*See* ECF 4, at 9–17.) Among other things, plaintiffs seek damages, an end to cemetery-plot construction, and invalidation of the deed "purporting to convey the cemetery property . . . to the Jamul Indian Village." (*Id.* at 23.)

**B.     The Peculiar Path to Federal Court**

Plaintiffs' initial state-court complaint explicitly relied on many federal statutes for their claims. *See Rosales v. The Roman Catholic Bishop of San Diego*, Case No. 37-2023-00014849-CU-PO-CTL, ECF 1 (S.D. Super. Ct. Apr. 5, 2023). After the defense removed that action to federal court, plaintiffs voluntarily dismissed. *See Rosales v. Roman Catholic Bishop of San Diego*, No. 23-cv-00849-DMS-DEB, ECF 4 (S.D. Cal. May 10, 2023). The same day, plaintiffs refiled a substantively identical suit in state court, but omitted any mention of federal statutes. (*See* ECF 1, at 3.) In removing the case yet again, the defense argued that plaintiffs engaged in improper "artful pleading" to avoid mentioning the governing federal law. (*See* ECF 1, at 7.) Notably, the defense also maintained that the complaint's request for an injunction touching on the Village's federal-trust lands established an additional basis for this Court's jurisdiction. (*See* ECF 1, at 5.) After the second removal, plaintiffs filed an amended complaint deleting that injunction demand. (*Compare* ECF 1-2, *with* ECF 4.)

3

A flurry of motions ensued. Plaintiffs seek to remand the case to state court, while both defendants move to dismiss on various grounds. (*See* ECF 6, 17, 21, 23.) Everyone calls for sanctions against the other side. (ECF 6-1, at 32–33; ECF 34 & 39.)

## DISCUSSION

### A. Preliminary Issue: Alleged Fraudulent Transfer

Before turning to the motions, this Court must dispense with a misguided legal position that surfaces in nearly all plaintiffs' arguments. They repeatedly assert that "the Jamul Indian Village (JIV) is not the record title owner of parcel 597-080-06, since the Bishop's 2017 deed was void when recorded," and therefore the Village has no interest at all in the "cemetery plot." (*See, e.g.*, ECF 18, at 3.) In advancing this theory, plaintiffs misunderstand the law upon which they principally rely: California Civil Code section 3439.07(a)(1). (*See* ECF 4, at 14.) That provision has no effect on title whatsoever—unless and until a fraudulent-transfer claim is proven. In other words, simply alleging a fraudulent transfer doesn't void the deed. *See Kirkeby v. Superior Ct.*, 93 P.3d 395, 399 (Cal. 2004) (holding that a section 3439.07(a)(1) claim "*if successful, may result in the voiding of a transfer of title of specific real property*" (emphasis added)). In addition, even if a fraudulent transfer is proven, a section 3439.07 claim will not necessarily void the entire transfer. The statute only permits avoidance "of the transfer" "to the *extent necessary*" to satisfy a creditor's judgment. Cal. Civ. Code § 3439.07(a)(1) (emphasis added).

Contrary to plaintiffs' repeated claims, then, the Village *does* have an ownership interest in the "cemetery plot." And there's no guarantee that—even if plaintiffs were successful—they could unwind the entire transfer. With that recurring point cleared up, the remaining issues before the Court are much easier to resolve.

### B. Motion to Remand

The parties first debate whether this Court should hear this case at all. Plaintiffs urge a remand. After abandoning their request for injunctive relief on the federal trust lands, they insist that "the Court has no reason to exercise supplemental jurisdiction, since all

claims over which it had jurisdiction have been dismissed or super[s]eded by timely amendment." (ECF 18, at 1.) Defendants vigorously disagree. But this Court need not resolve whether any federal claims remain. Even if there were none, this Court would, in its discretion, keep the case.

If a federal court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over any remaining causes of action. 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).

This is not the "usual case." As explained later, this case is frivolous. Thus, a remand will aid neither judicial economy nor convenience nor fairness. It would merely force the parties to brief, yet again, issues now ready for resolution as well as saddle another court with the burden of reviewing the voluminous record and legal arguments. But the outcome would not change.

As to comity, the federal interest in these claims is uncommonly strong. First and foremost, there is a powerful federal concern for vindicating tribal sovereign immunity, which "is a matter of federal law." *See Kiowa Tribe of Okla. v. Manufacturing Techs., Inc.*, 523 U.S. 751, 759 (1998). In addition, the requested injunction on CJ Associates' construction work touches on several issues of federal interest. That work is based on the Village's Tribal Environmental Impact Report, which is in turn a requirement of the 2017 Tribal-State Compact between the Village and California. *See* Tribal Environmental Impact Report, Jamul Casino Hotel and Event Center Project, at 2.3.10, available at https://files.ceqanet.opr.ca.gov/278736-2/attachment/7lo1GGdDbMXYzPxQgaZCaKsJZ aEkGiALvMu4cadun5rOkKiyAReSc8jJo7w2bw0U_l0HYzmpGdQ5Kluc0 [https://perm a.cc/9WLD-WCUH]; Tribal-State Compact Between the State of California and the Jamul Indian Village of California, at 73–80, available at

https://www.ca.gov/archive/gov39/wp-content/uploads/2017/09/Final_Jamul_Indian_Village_Compact_8.8.16.pdf [https://perma.cc/U7D2-MAEL]. Federal district courts have broad original jurisdiction over injunction requests arising from such compacts, at least as between the tribe and state. *See* 25 U.S.C. § 2710(d)(7)(A)(ii); *see also Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997) (recognizing "the importance of the enforcement of Tribal-State compacts in the federal courts"). And the federal Secretary of the Interior must approve all such compacts. *See* 25 U.S.C. § 2710(d)(8). In sum, comity concerns are at an ebb here, which also cuts against remand.

Regardless, remand is never required if it "would be futile." *Bell v. City of Kellogg*, 922 F.2d 1418, 1424–25 (9th Cir. 1991) (affirming remand denial in a "futile" case, even though court lacked "subject matter jurisdiction"). When plaintiffs' suit has no "hope," "resolution of the entire case prevents any further waste of valuable judicial time and resources." *Id.* at 1425. So it is here. The remand motion is denied.

**C.    Motion to Dismiss**

The defense's motion to dismiss must be granted for the same reason plaintiffs have heard time and again: The Village is an indispensable party, yet sovereign immunity stops it from being involuntarily added to the case. *See* Fed. R. Civ. P. 12(b)(7) (authorizing dismissal for "failure to join a [required] party"). To determine if a party is indispensable, courts undertake a three-step inquiry: (1) "Is the absent party necessary (i.e., required to be joined if feasible)"? *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). (2) "If so, is it feasible to order that the absent party be joined?" *Id.* (3) "If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed?" *Id.*

**1.    *Is the Village a Necessary Party?***

A party is considered "necessary" if it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest." Fed. R. Civ. P. 19(a)(1)(B)(i). The Village has claimed title to the property since 2017

6

through a recorded deed. (*See* ECF 4, at 23.) Plaintiffs explicitly request "set[ting] aside" and "void[ing]" that ownership interest and unwinding six years of stewardship over that land. (*See id.*) This—combined with the more immediate impact on the ongoing construction in support of the Village's hotel—plainly implicates the Village's property interest. So, it is a necessary party.

This conclusion should not shock plaintiffs or their attorney. It's been a consistent court finding each time they've attempted to deprive the Village of land. *See, e.g.*, *Rosales*, 73 F. App'x at 914 (holding that the Village's interest in "the parcel of land at issue" "would be impaired if Appellants were declared to be the beneficial owners of the land"); *Rosales v. Dutschke*, 279 F. Supp. 3d 1084, 1093–94 (E.D. Cal. 2017) (ruling that the Village's property interest in its "cemetery land" "cannot be adjudicated without its formal presence"), *aff'd*, 787 F. App'x 406 (9th Cir. 2019).

### 2. *Is it Feasible to Join the Village?*

The feasibility answer is straightforward: The Village cannot be joined "without its consent," due to its "sovereign immunity from suit." *See Rosales*, 73 F. App'x at 914.

### 3. *Is the Village Indispensable?*

When joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). In this analysis, courts consider these factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* When "a tribe cannot be joined due to tribal sovereign immunity," however, the balancing of these equitable factors "almost always favors dismissal." *Jamul Action*, 974 F.3d at 998.

The first three factors support dismissal. Plaintiffs "ask this Court to issue a mandatory injunction ordering the [Bishop] to stop the Tribe's construction" on the land. *See Rosales v. United States*, No. 07CV0624, 2007 WL 4233060, at *5 (S.D. Cal. Nov. 28, 2007). "This relief directly implicates the Tribe's activities and cannot be fashioned to protect the absent Tribe's interests." *See id.* "The Village would be prejudiced" if it lost control of a parcel of its land, and "relief cannot be shaped to avoid this prejudice." *See Rosales*, 73 F. App'x at 915; *see also Rosales*, 279 F. Supp. 3d at 1094 (same). The only factor that leans in plaintiffs' favor is the last: the lack of an adequate remedy upon dismissal. But "the tribe's interest in maintaining its sovereign immunity outweighs the plaintiffs' interest in litigating their claims." *Rosales*, 73 F. App'x at 915 (cleaned up).

Like past judges faced with this issue, this Court concludes that "the Village" is an "indispensable party, without whom this action cannot proceed." *Id.* at 915; *see also Rosales v. Dutschke*, 787 F. App'x 406, 407 (9th Cir. 2019) ("[T]he claims were properly dismissed for failure to join the tribe."); *Jamul Action*, 974 F.3d at 998 ("Equity and good conscience do not permit an action disputing . . . its ownership of land in a suit in which the Village cannot be joined."); *Rosales*, 2007 WL 4233060, at *5 ("The Tribe is also an indispensable party."); *Rosales*, 279 F. Supp. 3d at 1094 ("The JIV is an indispensable party."). Because that indispensable party cannot be joined—and just like plaintiffs' many other cases—this suit must be dismissed.

The fact that some of plaintiffs' claims arise under California law does not alter this result. The analogous state rule concerning joinder—California Code of Civil Procedure section 389—adopts Rule 19's language "practically in its entirety." *Rosales v. State, Dep't of Transp.*, No. D066585, 2016 WL 124647, at *7 (Cal. Ct. App. Jan. 12, 2016). Under either rule, then, the outcome is the same. In fact, the state courts already rejected this very argument—for the same reasons as this Court—in plaintiffs' last attempt

to oust the Village from the land without joining them in the litigation. *See Rosales*, 2016 WL 124647, at *11–12 ("Given that the JIV may not be joined as a result of its sovereign immunity, the trial court reasonably concluded that dismissal of the action was appropriate.").

### D. Motions for Sanctions

That leaves the dueling sanctions requests. Because plaintiffs' demand was included in their now-denied motion for remand, their plea for sanctions is denied. (*See* ECF 6-1, at 32–33.) The defense motions are another matter. Both CJ Associates and the Bishop seek to recoup their attorneys' fees. The defense argues that plaintiffs maintained this suit solely for harassment and with full knowledge that it was doomed. (*See* ECF 34 & 39.) After surveying the legal carnage of the past few decades—including plaintiffs' 20-plus failed lawsuits with various shifting and meritless theories—the Court must grudgingly agree. The only viable conclusion is that this action was brought in bad faith. And it is equally apparent that this campaign of harassment will not end until plaintiffs and their attorney are held to account for abusing the legal process.

#### 1. *Sanction Types*

Under federal law, there are three sanction tools that meet this moment. First, Rule 11 sanctions. By "presenting to the court" a "pleading, written motion, or other paper," an attorney necessarily represents that "it is not being presented for any improper purpose, such as to harass," and that the "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b). Whenever that requirement is breached, "the court may impose an appropriate sanction on an attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). This rule's "central purpose" is to "deter baseless filings in district court" and to "streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Rule 11 sanctions do not require a showing of "subjective bad faith." *Business Guides, Inc. v. Chromatic Comms. Enters.*, 498 U.S. 533, 548–49 (1991).

Second, statutory sanctions. "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Statutory sanctions are not limited to discrete actions within a case. They may "shift the entire financial burden of an action's defense, including attorneys' fees, if the entire course of proceedings was unwarranted and should not have been commenced or pursued." *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 632 (9th Cir. 2017). Like its Rule 11 counterpart, these sanctions don't depend on "subjective bad faith": "recklessness plus knowledge" triggers penalties. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002), *as amended* (Feb. 20, 2002).

Finally, the Court "has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez,* 239 F.3d 989, 992 (9th Cir. 2001). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994.

All three sanction forms are justified. The Court finds that this suit was brought in bad faith for purposes of harassment *and* raised a frivolous position, without seeking an extension, modification, or reversal of the law.

That inescapable conclusion is buttressed by the many judicial warnings ignored on the path here as well as by an improper-motive finding affirmed just six months ago. We quote a mere sampling of those warnings—from various courts—over the last 15 years:

- ***Federal Claims Court* (2009)**: "Despite vainly prosecuting myriad legal claims in every conceivable forum and fruitlessly propounding inventive and novel legal theories, plaintiffs have continually stared down the face of defeat, personifying Mason Cooley's aphorism, 'if you at first don't succeed, try again, and then try something else.' Plaintiffs' current attempt to defy their fate—an attempt this court strongly admonishes plaintiffs to make their last—miscarries again." *Rosales v. United States*, 89 Fed. Cl. 565, 572 (2009).

- ***California Court of Appeal* (2016)**: "[T]his action is but yet another attempt to derail the [Village] as part of the long-standing dispute between [plaintiffs]

and the leadership of the [Village] that has led to litigation in a variety of forms for more than 20 years." *Rosales v. State, Dep't of Transp.*, No. D066585, 2016 WL 124647, at *11 (Cal. Ct. App. Jan. 12, 2016).

- **U.S. Court of Appeals for the Ninth Circuit (2020)**: "In an opinion that we hope will finally put an end to these claims, we hold as follows. The distinction [plaintiff] urges between historic tribes and other tribal entities organized under the [Indian Reorganization Act] is without basis in federal law. Jamul Indian Village is a federally recognized Indian tribe with the same privileges and immunities, including tribal sovereign immunity, that other federally recognized Indian tribes possess." *Jamul Action*, 974 F.3d at 989.

Through the decades, plaintiffs and their attorney disregarded these red flags and kept trying to do the same criticized legal maneuvers. Despite mounting adverse rulings—in federal, state, tribal, and administrative tribunals—plaintiffs tilted at the windmill of the Village's sovereign immunity and its property ownership over and over.

It is no wonder, then, that a recent court—at long last—ruled that "plaintiffs and their counsel" had "not presented [their amended complaint] in good faith," in part because they intended "to overcomplicate and obscure" the suit. *See Rosales v. United States Dep't of Interior*, No. 2:20-cv-00521-KJM-KJN, 2022 WL 2052639, at *2–3 (E.D. Cal. June 7, 2022). In that case, the district court "decline[d] to impose monetary sanctions," because it dismissed the entire lawsuit as a penalty. *Id.* And the Ninth Circuit affirmed. *Rosales v. United States Dep't of the Interior*, No. 22-16196, 2023 WL 5524755 (9th Cir. Aug. 28, 2023).

To recap, in addition to this case's frivolousness, the Court must take stock of plaintiffs' decades of losses in related litigation, the pointed warnings of multiple courts, and a recent improper-motive finding. Perhaps standing alone, any one of these grounds would be insufficient to convince the Court of the need for sanctions. But taken together, the situation is clear: Plaintiffs and their attorney leveraged this suit in bad faith to undermine the Village leadership's decisions and to harass those doing business with the Village. Sanctions are called for under Rule 11, 28 U.S.C. § 1927, and the Court's inherent

authority. Given this ruling, the Court need not address the Bishop's request for the same sanctions under state law.[1] (*See* ECF 34-1, at 22.)

### 2. *Scope of Sanctions*

What type of sanction is required to deter future abuses? Judicial admonishment and even outright dismissal have been ineffective. At a minimum, a monetary penalty is due (and likely overdue). Thus, the Court assesses a compensatory sanction equal to all the defense's attorneys' fees in defending this case number 23-cv-0908-AGS-JLB, dating back to its removal to federal court. (*See* ECF 1.) Perhaps an even stiffer penalty is justified, but this appears to be the first monetary sanction leveled against plaintiffs or their attorney. This should drive the point home. Plaintiffs and their attorney are now on notice: If they keep mounting meritless lawsuits against the Village or its partners—and waste valuable court resources along the way—they will likely face escalating financial sanctions.

The Court holds plaintiffs, their attorney, and their attorney's firm jointly liable for paying the assessed penalty. Plaintiffs are sanctioned under the Court's inherent authority, their attorney under all three bases for sanctions, and the firm under Rule 11. *See* Fed. R. Civ. P. 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.").

## CONCLUSION

Perhaps this case will differ from the dozens preceding it, with plaintiffs finally laying down arms and accepting their losses. "At some point, litigation must come to an end." *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1042 (9th Cir. 2011). Regardless, the close of this chapter in the saga "has now been reached." *Id.* Accordingly, the Court orders as follows:

1. Plaintiffs' motion to remand is **DENIED**.

---

[1] The Court also need not reach whether plaintiffs' counsel's conduct is an additional basis for sanctions. (*See, e.g.*, ECF 34-1, at 17–20.) This is not, however, to be construed as condoning counsel's behavior.

2. Defendants' motions to dismiss are **GRANTED**, based on Rules 12(b)(7) and 19.

3. Defendants' sanctions motions are **GRANTED** in part, as set forth above.

4. Because the Court need not reach any other issues, the remaining motions are **DENIED AS MOOT**.

By March 30, 2024, the parties must meet and confer as to the total owing under this order. By April 29, 2024, the parties must file any motion seeking resolution of any dispute over any specific claimed fee. If any party timely appeals, the sanction portion of this order will be automatically stayed. The Clerk is directed to issue a judgment and close this case.

Dated:  February 29, 2024

Hon. Andrew G. Schopler
United States District Judge